## In re COLWELL.

(Supreme Court, Appellate Division, First Department. November 14, 1902.)

1. MANDAMUS—INSPECTION OF CORPORATE BOOKS.

　　Mandamus should not be granted to compel the directors of a corporation to permit a stockholder to inspect its books and papers, except in an emergency and for a necessary purpose, limited by some regard of the interests of the corporation and its stockholders.

2. SAME.

　　The petition of a stockholder, seeking to compel the directors to permit an inspection of the corporate books, showed that petitioner was the owner of more than 6 per cent. of the capital stock, and alleged that she desired an examination of such books as would permit her to ascertain whether the corporation had been properly managed during the preceding year, and averred that several transactions mentioned, extending over a period of several years, were of doubtful legality, including years before she became a stockholder, but did not set forth the facts. The directors of the corporation explained the transactions mentioned, and showed that they had been for the best interests of the corporation. They also showed that considerable loss would result from permitting such an inspection. *Held* that, though assuming that the remedy provided by Stock Corporation Law, § 52, entitling a stockholder owning more than 6 per cent. of the capital stock to call upon the treasurer of

---

¶ 1. See Corporations, vol. 12, Cent. Dig. § 685; Mandamus, vol. 33, Cent. Dig. § 264.

the corporation for a statement of its affairs, is not exclusive, the court could not grant a writ of mandamus to compel the corporation to permit an inspection of its books relating to the transactions specified in the petition.

Appeal from special term, New York county.

Application by Ida Cora Colwell for mandamus against the Colwell Lead Company to compel defendant to permit an inspection of the books of the corporation. From an order granting a peremptory writ of mandamus, defendant appeals. Reversed.

The petitioner for the peremptory writ of mandamus for an inspection of the books of the Colwell Lead Company is Ida Cora Colwell, a stockholder thereof, owning 180 shares out of an issue of 3,000 shares of stock. ·Of the 3,000 shares, representing a capital of $30,000, 1,506 shares were owned in his lifetime by B. Frank Hooper, who, until his death on April 20, 1902,· was the president of the company, which is a domestic corporation. After his death a meeting of the stockholders was held, at which suggestions for its future management were made, and a committee was appointed to investigate certain matters connected with the company, and made its report. The condition of affairs as presented before the stockholders was unsatisfactory to the petitioner, and, believing that certain transactions were unprofitable and unauthorized, she made a written demand for certain information ·on June 19, 1902, for· permission to inspect and make extracts from meetings ·of the board of directors of the company from January 1, 1890, to date, and to examine into certain specified transactions, and, this request not being accorded her, moved for a peremptory writ of mandamus, in which motion she was ·supported by an affidavit of her attorney and opposed by affidavits by the secretary and president of the company. These answering affidavits deny any illegal transactions as alleged, and, taking up each of the transactions mentioned by the petitioner, explain them by showing the details thereof, and also aver that the petitioner has not proceeded under the statute for information to which, as the holder of 6 per cent. of the capital stock of the company, she is entitled. They further set forth the course pursued by the management of the company since the death of its former president, for the purpose of showing that it has been prudent and in furtherance of business commenced under him. The motion was granted, directing a peremptory writ of mandamus against the company, and directing it to permit the petitioner "to examine, inspect, and make extracts from the minutes of the meetings of the board of directors from January 1, 1890, to date; and to examine, inspect, and make extracts from the minutes of the meetings of the stockholders held since the 1st day of January, 1890; and to examine, inspect, and make extracts from all books and papers showing any transactions in connection with the American Sanitary Company, especially such transactions as show payments of moneys of the Colwell Lead Company made on behalf of the said American Sanitary Company or to them; and to examine, inspect, and make extracts from all books showing dealings with the Independent Foundry Company, especially all books and records showing payments of any moneys by the Colwell Lead Company, either for or on account of the Independent Foundry Company, or which are connected therewith; and to examine, inspect, and make extracts from all books and papers showing any expenditures made on account of property situate at the corner of Thirty-Ninth street and Sixth avenue, and all correspondence in any way relating to said property, and all other books and papers which treat in any way of said property located at the corner of Thirty-Ninth street and Sixth avenue; and to examine, inspect, and make extracts from all books and papers and all contracts made with the Ferry Manufacturing Company; and to examine, inspect, and make extracts from any and all books and papers of the said company which contain any matters relating to actions of the board of directors or the officers of said company in the matter of any of the foregoing contracts, agreements, or investments. Such examination is to be made between the hours of 1:30 and 4 o'clock in the afternoon of any .week-.days, except Saturdays, at the office of the said Colwell Lead Company, and

in respect of not more than one of each of the several branches of examination, inspection, and extracts to be taken, permitted on any single day and upon at least 48 hours' notice, with designation of the branch thereof as to which production of documents for such examination, inspection, and extracts is desired." From the order so entered the company appeals.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, O'BRIEN, and LAUGHLIN, JJ.

John De Witt Warner, for appellant.
George A. Viehmann, for respondent.

O'BRIEN, J.  It was long doubted whether the supreme court had the power, except in the way provided by statute, to compel a corporation by mandamus to submit to an examination of its books. This doubt was removed in Re Steinway, 159 N. Y. 250, 53 N. E. 1103, 45 L. R. A. 461, wherein it was held that:

"The common-law right of a stockholder with reference to inspection of the books of his corporation still exists in this state, unimpaired by legislation; and the supreme court has power, as part of its general jurisdiction, to enforce the right, in its sound discretion, upon good cause shown."

This decision has been followed by a flood of applications on the part of stockholders to examine the books of corporations, and from the slight reasons given and the broad scope of the examination asked would seem as if the impression was becoming quite generally prevalent that for any purpose and to any extent a stockholder is entitled to examine the books of his corporation. A good illustration of the prevalence of this impression is furnished by the present record, wherein a minority stockholder, who has been such for more than 6 years, desires an examination of the minutes of the stockholder's meetings for the 12 years last passed, and an inspection of all books and papers relating to certain specific transactions set forth in her petition, stating as her only object that:

"Your petitioner desires an examination of such books and papers of said concern as will permit her to ascertain whether or not the said company has been properly conducted during the past year, so that she may preserve and protect her right in connection with the stock owned by her."

Being a stockholder owning more than 6 per cent. of the capital stock, she was entitled, under section 52 of the Stock Corporation Law, upon making a written request to the treasurer, to have furnished to her a statement of the affairs of the corporation embracing a particular account of all its assets and liabilities. This remedy she did not invoke, although seemingly it would have given her all the information she desired. Assuming, however, without deciding, that that remedy is not exclusive, and that the supreme court has the right to order an inspection of the books and accounts upon a proper showing being made, the question still remains whether upon the petition here presented, read in the light of the answering affidavits, such a showing was made as called upon the court to grant the extensive relief here accorded by mandamus.

We have not overlooked the statement in the petition that some of the transactions are characterized as of doubtful legality and as seem-

78 N.Y.S.—39

ingly unauthorized; but such characterizations, in the absence of any facts tending to support them, are mere conclusions, upon which judicial action cannot be founded. Each one of the transactions assailed, moreover, is taken up by the answering affidavits and thoroughly explained; and that this is true is evident from the conclusion reached by the learned judge at special term, who, in deciding the motion and referring to the transactions called into question by the petitioner, says:

"It seems plain that the management of the company since the death of its late president has been prudent and conservative, and characterized by a proper recognition, and that the company, now suddenly deprived of the advantage of his concededly great business capacity, should somewhat contract the sphere of its operations and strengthen its position."

The learned judge, however, granted the application, as appears from his opinion, for the reason that "it is not denied that certain of these transactions have been of doubtful legality." We find no such admission in the answering affidavits, but, on the contrary, in our reading of them, there are specific, as well as general, denials of the allegations of the petition, and also full explanations of each transaction mentioned, tending to show, not only that they were legal, but that they were for the benefit of the corporation and its stockholders.

It would unnecessarily prolong this opinion to take up each transaction which, to the extent that the petitioner asked for an explanation, may be said to be called in question; it being sufficient to say that in our opinion the explanations were furnished by the answering affidavits, and that, as the record stood before the special term, the application should in all respects have been denied, perhaps with leave to move for any definite information which was necessary to effectuate any proper and useful purpose essential to protect her rights or those of the corporation or stockholders. It is always an easy matter to find out some of the transactions of a going concern; and if, by merely stating these and characterizing them, in the opinion of the stockholder, as of doubtful legality, a mandamus will issue, entitling the stockholder to an unlimited examination of the books for a period of 12 years, then every barrier to an unlimited examination of the affairs of a corporation will be removed, and the rule hereafter to be followed will be to allow such examinations as matter of course and matter of right. We do not understand that this is the law, or that our courts have yet gone to such an extent. Were we to affirm this order, it might well be looked upon as an authority sustaining such a rule, because an analysis of the moving affidavits, in which certain transactions are detailed, will show that they are not accompanied even with the usual statement of a belief on the part of the petitioner that the company, or any stockholder, has lost anything or is likely to lose anything by such transactions, or that the company, or a stockholder, or any one else, intends to ask reparation or bring suit because of them; nor is it suggested that the information is desired in that the petitioner may have knowledge upon which she may vote intelligently at the next annual meeting of stockholders. Without, therefore, suggesting any laudable purpose or object, the petitioner, if this order is sustained, is to be ac-

corded most extensive relief.  As shown by one of the answering affidavits :

"The books, inspection of which is asked for, include many volumes and extensive files of papers, correspondence, and accounts, extending over 10 or more years, which should not be removed from the office of the company, the production of which, and the furnishing of facilities for such inspection and right to copy asked for, would largely engross the company's clerical force, and seriously interfere with its business, to a net and certain damage, as deponent believes, to exceed one thousand ($1,000) dollars, and probably more than that amount, irrespective of the knowledge thereof which it would be powerless to keep from its customers and those who do business with it, and the serious danger to its repute and credit that would result from the report that such an examination was going on."

Such a drastic remedy should never be granted, except in an emergency or for a necessary purpose; and it should be limited by some regard to the interests of the corporation and its other stockholders.  Whatever view might be taken as to the sufficiency of the moving affidavits, we think, as stated, that, when read in the light of the answering affidavits, the proper disposition would have been to deny the application.

Our examination of this record, therefore, has brought us to the conclusion that the discretion vested in the special term was improperly exercised, and that the order, accordingly, must be reversed, with costs and disbursements, and the motion denied, with costs. All concur.